



**FILED**
**Nov 30, 2023**
**12:27 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **ANDREW KELLEY,** | ) | **Docket No. 2023-06-01638** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | **State File No. 94578-2021** |
| | ) | |
| **EXPRESS SERVICES, INC.,** | ) | |
| **Employer.** | ) | **Judge Joshua D. Baker** |

---

## EXPEDITED HEARING ORDER

---

In a November 16, 2023 expedited hearing, Mr. Kelley requested right-hip arthroscopic surgery recommended by his authorized doctor. Express Services argued a preexisting condition rather than the work injury necessitated the surgery. For the reasons below, the court orders Express Services to authorize the surgery.

### Claim History

Mr. Kelley was a healthy high school student when he began having pain in both hips in 2017. He was diagnosed with a genetic deformity that resulted in Dr. Chad Price operating on both hips: his left hip in 2018, and his right hip in the fall of 2019.

Mr. Kelley recovered well from both surgeries but visited Dr. Price in the late spring of 2020 complaining of right hip pain after weightlifting. Records from the visit suggest Dr. Price thought it "unlikely that he has retorn his labrum." Two months later, Mr. Kelley reported some improvement, and Dr. Price wrote, "[H]is hip has recovered very well[,] and I am not concerned he has reinjured this." Mr. Kelley did not return to Dr. Price after that visit and testified he was pain-free and unrestricted in his activity for nearly nineteen months.

Then on December 16, 2021, while working for Express Services, Mr. Kelley felt a painful pop in his right hip while lifting four steel beams. He reported the injury, and Express Services accepted his claim.

An MRI taken a month later showed no noticeable labral tear, suggesting only a hip sprain. After continued pain and some initial conservative treatment, Mr. Kelley came under the care of Dr. J.W. Thomas Byrd, a hip specialist he chose from a panel.

Ten months later, Mr. Kelley had another MRI that showed a "possible small . . . labral tear." Dr. Byrd testified that MRIs are unreliable for diagnosing labral tears. Instead, he focused on Mr. Kelley's poor response to conservative treatment. He said a physical therapist helps "really dissect out" if "the problem is coming from inside the joint [or] outside the joint." Further, a cortisone injection is "the most reliable way" to "differentiate whether or not the hip joint is really the source of [the] pain." According to Dr. Byrd, Mr. Kelley "had about 95 percent relief [after the injection], which is the most reliable test[.]"

Considering the information gleaned from the cortisone injection, Dr. Byrd recommended arthroscopic surgery to identify and repair damage to the hip caused by the work incident. He explained, "[W]hen they have persistent hip pain that's failed conservative treatment – activity modification, time, physical therapy, steroid injections – we found that 84 percent of the time we identify damage that can be addressed arthroscopically to improve their symptoms[.]"

Express Services did not authorize the surgery, claiming a preexisting hip condition required the procedure, not the work accident. It cited a previous surgical repair by Dr. Price of a right-hip labral tear caused by a genetic deformity.

Dr. Byrd believes Mr. Kelley tore his labrum when lifting the steel beams and twisting because that is how the pain started and because Mr. Kelley was "pretty much unrestricted" until then. In a questionnaire response, he acknowledged Mr. Kelley's preexisting hip condition could have "made him more susceptible to injury" but did not change his opinion that the work accident injured his hip.

Dr. Michael Calfee, an orthopedic surgeon who examined Mr. Kelley for Express Services, largely deferred to Dr. Byrd concerning hip treatment, calling him a "world expert." He agreed with Dr. Byrd's treatment recommendation and that hip labral tears are "really hard to diagnose on [an] MRI."

But he disagreed with Dr. Byrd concerning causation of Mr. Kelley's present hip condition. He said "that this is not a work-compensable injury" based on his understanding of workers' compensation law. He expressed great uncertainty about when, or if, a preexisting condition could become a compensable injury. When asked if the work injury "contributed more than 50 percent in aggravating [the] prior right hip condition," he answered, "[T]hat's difficult to say, but I don't think it matters in the – in my understanding. I don't really know how to answer that, to be honest with you."

When asked to support his opinion with medical documentation, he cited instead his "experience and understanding of studying about this stuff" and "studying the law and . . . trying to understand what they did in 2014 when they changed the law[.]" He concluded, "I feel confident in what I've said that I do not think his hip problem is work compensable."

Although he explained how a "cam and pincer deformity"—which Mr. Kelley had but that Dr. Price repaired—causes labral tears, he did not explain how or if that condition still exists in Mr. Kelley's hip or how it might have contributed to a present labral tear. Dr. Price, who last examined Mr. Kelley nineteen months before his work accident, signed a questionnaire response sent by Express Services. He wrote that Mr. Kelley's cam and pincer impingement "was corrected at initial surgery" and would not cause pain now. Unlike Dr. Byrd, he relied heavily on the MRI results. He wrote, "Since there was no tear documented on MRI, and he had pain at my last visit, I can't determine that a work injury is ≥ 50% involved."

However, Dr. Price repeatedly expressed unfamiliarity with Mr. Kelley's work injury and his present condition. For example, he wrote statements like: "I can't answer this"; "I can't answer what has happened since I last evaluated him"; and, "I haven't evaluated him since, so I can't say." He also qualified his responses with phrases like "during my time treating him" and "assuming 0 [new] injury."

Mr. Kelley said that pain from the work injury is different from the pain he felt after lifting weights. The pain has not decreased despite using ibuprofen daily.

**Findings of Fact and Conclusions of Law**

Mr. Kelley must present sufficient evidence that he would likely prevail at a final hearing to succeed at an expedited hearing. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2023); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). The Court finds he carried this burden and orders Express Services to pay for the surgery Dr. Byrd recommended.

Mr. Kelley presented Dr. Byrd's opinion that he tore his labrum in his right hip from lifting and twisting at work. Dr. Byrd's causation opinion as the panel physician is presumed correct and is rebutted only by a preponderance of evidence. Tenn. Code Ann. § 50-6-102(E). To rebut that presumption, Express Services presented Dr. Calfee's opinion and the questionnaire response from Dr. Price.

When faced with competing expert opinions, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A. Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Here, Dr. Byrd's opinion is presumed correct, and he is highly qualified. In fact, Dr. Calfee deferred to and acknowledged Dr. Byrd's expertise concerning hips at his deposition.

Dr. Price is also qualified in hip treatment and more familiar with Mr. Kelley's preexisting condition than Drs. Byrd and Calfee. However, he lacked recent, important information, as he has not treated or examined Mr. Kelley in nineteen months and is unfamiliar with this work accident.

Put simply, Dr. Byrd explained convincingly why he believes the work incident caused a labral tear or "damage" requiring arthroscopic repair. He depicted a new and distinct injury caused by the work incident that is separate from Mr. Kelley's preexisting hip condition, which Dr. Price repaired.

But most importantly, Dr. Byrd explained his medical conclusion using medical documentation from the claim. By contrast, Dr. Calfee simply stated a legal conclusion without explaining its medical basis.

In sum, the opinions of Drs. Calfee and Price do not outweigh Dr. Byrd's opinion and its presumption of correctness. Additionally, Mr. Kelley's testimony that he has experienced new pain since the work incident supports the conclusion that the damage Dr. Byrd wants to repair was caused by the work accident. *See Limberakis v. Pro-Tech Sec., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Sept. 12, 2017) ("[A]n employee's assessment as to his own physical condition is competent testimony that is not to be disregarded.").

For these reasons, the Court holds Mr. Kelley is likely to prevail at trial in proving he suffered a work-related injury that necessitates surgery and orders Express Services to authorize the surgery.

**It is ORDERED** as follows:

1. Express Services shall authorize the arthroscopic surgery recommended by Dr. Byrd.

2. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary

confirmation within the period of compliance may result in a penalty assessment for non-compliance.

3. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

4. The Court sets a **scheduling hearing on Monday, March 4, 2024, at 10:00 a.m. Central Time.** The parties must call (615) 741-2113 or toll-free at (855) 874-0474 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED November 30, 2023.**

_____

**Judge Joshua D. Baker**
**Court of Workers' Compensation Claim**

## **APPENDIX**

Exhibits
1. Medical Records
2. Affidavit of Andrew Kelley
3. Deposition of Dr. J.W. Thomas Byrd, including curriculum vitae
4. Questionnaire responses of Dr. Chad Price dated September 21, 2023
5. Questionnaire responses of Dr. J.W. Thomas Byrd dated June 22, 2022
6. Questionnaire responses of Dr. Michael Calfee dated May 23, 2023
7. Deposition of Dr. Michael Calfee
8. Andrew Kelley's payroll document
9. Wages of a similarly situated employee no. 1
10. Wages of a similarly situated employee no. 2
11. Rule 72 declaration of Josuel German and Air Force ROTC records of Andrew Kelley

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Motion to Compel Exam
5. Response to Motion to Compel Exam
6. Employer's Motion for Stay of Enforcement of Medical Director's Order
7. Employee's Motion for Sanctions
8. Response to Motion for Stay
9. Response to Motion for Sanctions
10. Order Compelling Independent Medical Examination, Granting Stay, and Denying Sanctions
11. Employee's Motion to Compel Compliance with Medical Director's Order
12. Response to Motion to Compel Compliance
13. Order Cancelling Hearing on Motion to Compel Compliance
14. Request to Resume Mediation filed July 6, 2023
15. Employer's Motion to Continue
16. Response to Motion to Continue
17. Employee's Motion to Quash Deposition
18. Response to Motion to Quash
19. Order Denying Motion to Continue and Granting Motion to Quash

# CERTIFICATE OF SERVICE

I certify that a correct copy of this was order was sent as shown on November 30, 2023.

| Name | Mail | Via Fax | Via Email | Email Address |
|------|------|---------|-----------|---------------|
| Jeffrey Boyd, Employee's attorney | | | X | jboyd@borenandboyd.com<br>scallison@borenandboyd.com |
| Houston Gunn, Troy Hart, Employer's attorneys | | | X | hmgunn@mijs.com<br>wth@mijs.com<br>inhoward@mijs.com |

_____

**Penny Shrum, Court Clerk**
**WC.CourtClerk@tn.gov**



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*